PHSHAWN WATTS,

    Plaintiff,

v.                               No. 2:20-cv-02777-MSN-tmp

SHELBY COUNTY CRIMINAL JUSTICE
CENTER,

    Defendant.

---

**ORDER MODIFYING THE DOCKET;**
**ORDER DISMISSING THE COMPLAINT WITHOUT PREJUDICE (ECF NO. 1);**
**AND GRANING LEAVE TO AMEND**

---

On October 26, 2020, Phshawn Watts, Tennessee Department of Correction prisoner number 20106562, who is incarcerated at the Shelby County Criminal Justice Center ("the Jail") in Memphis, Tennessee, filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On November 4, 2020, the Court granted him leave to proceed *in forma pauperis*. (ECF No. 5.)

Watts alleges a failure to protect him from violence by another inmate. (ECF No. 1 at PageID 2–3.) He unsuccessfully grieved this issue. (*Id*. at PageID 2.) He names the Jail as Defendant. (*Id*. at PageID 1–2.) He seeks: (1) damages for pain, suffering, and emotional distress; (2) termination of the involved correctional officer's employment; and (3) filing of "charges … against [that officer]." (*Id*. at PageID 3–4.) The Clerk shall modify the docket to add Officer F/N/U Rodger as a Defendant.

For the reasons explained below, Plaintiff's complaint fails to state a claim for which relief may be granted and is **DISMISSED WITHOUT PREJUDICE**. 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)–(2).

## I.   LEGAL STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n. 3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are

not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891

F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–13 (6th Cir.

Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading

requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in

his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.

1975))).

Plaintiff filed his complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress....

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of

rights secured by the "Constitution and laws" of the United States (2) committed by a defendant

acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## II.  DISCUSSION

### A.  Claim Against Shelby County Criminal Justice Center / Claim Against Rodger In His Official Capacity

Watts names the Jail as a Defendant.  (ECF No. 1 at PageID 1–2.)  However, the Jail is not

a "person" subject to suit under § 1983.  *See Dowdy v. Shelby Cty. Sheriff's Office*, No. 2:18-cv-

02310-TLP-tmp, 2019 WL 3948110, at *2 (W.D. Tenn. Aug. 21, 2019).

Even if the Court construes any allegations against the Jail as claims against Shelby

County, the allegations still fail this screening.  Plaintiff has not sufficiently set forth a claim

against Shelby County.  A local government such as a municipality or county "cannot be held

liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691–92; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). A plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

Watts does not describe any Shelby County policy or custom, let alone one that is unconstitutional or pursuant to which the Jail or the County acted. Plaintiff must identify an *official* policy or custom that caused his injuries. *See Weaver v. Henderson Cty.*, No. 16-1134-JDT-egb, 2017 WL 90386, at *2 n. 1 (W.D. Tenn. Jan. 10, 2017). Watts's complaint does not do so.

Related to this point are official capacity claims against Rodger. As an initial matter, Watts does not specify whether he sues Rodger in his official or individual capacity. The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891

F.2d at 592. "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). The official capacity claims in Watts's complaint are treated as claims against Rodger's employer— Shelby County. *See Jones v. Union Cty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). As explained *supra*, Watts does not state a claim against the County.

For all of these reasons, Watts does not state a claim against Shelby County or against Rodger in his official capacity.

### B. <u>Individual Capacity Claim Against Rodger For Failure To Protect</u>

Watts states that correctional officer Rodger: (1) handcuffed him; (2) transferred him from his protective-custody cell to a general-population pod, without any basis for doing so; and (3) left him handcuffed there for two hours, where he was assaulted by another inmate and sustained a hand injury. (ECF No. 1 at PageID 2–3 (the "Incident").) Plaintiff says that "a person on PC [protective custody] shouldn't be house[d] with someone in general population for no reason at all." (*Id*. at PageID 3.) Watts states that Rodger nevertheless did so "because I'm gay and he don't like what I am." (*Id*.) A day after the Incident, Watts was moved to a single-occupancy cell. (*Id*.) He does not identify the Incident's date.

The Court construes Watts's allegations as a claim that Rodger failed to protect him by placing him in a general-population cell unsupervised for two hours in handcuffs. (*Id*.) The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth

Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"). Accordingly, the Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

A failure-to-protect claim has objective and subjective components. To satisfy the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id.* at 766–67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). In analyzing the subjective component, courts must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

As to the objective prong, Watts does not offer facts alleging that he was "incarcerated under conditions posing a substantial risk of serious harm" on the day of the Incident. *See Bishop*, 636 F.3d at 766. Certainly, being attacked without provocation in prison — such as Watts describes — is not "part of the penalty that criminal offenders pay for their offenses against society." *See Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). However, the complaint states that Watts was spontaneously assaulted by a nefarious fellow inmate. (*See* ECF No. 1 at PageID 2–3.) The complaint does not allege any preexisting substantial risks of the Incident occurring. For example, Watts does not suggest that the offender-inmate was

a past aggressor at Jail towards him or others. Moreover, there is nothing in the complaint from which to plausibly infer that either Rodger or the offender-inmate knew of Plaintiff's sexual orientation or that they harbored animosity towards him because of it.

As to the subjective prong, Watts does not offer facts showing that Rodger subjectively knew of, and chose to be deliberately indifferent to, a significant risk of harm to him from an assault such as occurred here. Although Rodger left the general-population pod after Watts's transfer and never returned to perform a security round, (see ECF No. 1 at PageID 2–3), nothing in the record suggests that Rodger knew or should have known the aggressor-inmate would assault Watts. It is not enough that an official "should have perceived" a significant risk, "but did not." *Farmer*, 511 U.S. at 838. An official's state of mind must be "more blameworthy than negligence" before liability will attach. *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). For these reasons, Watts's complaint does not sufficiently allege Rodger's deliberate indifference. *Cf. Kendrick v. Pina*, No. 1-08-cv-1055-RCC, 2009 WL 799146, at *1 (E.D. Cal. Mar. 24, 2009) (inmate sufficiently alleged failure to protect claim where, before he was moved to a particular bunk: another inmate had attacked a homosexual prisoner; they were both transferred; and the assailant was moved back to the same dorm as plaintiff, despite defendants' knowledge of plaintiff's homosexual status and the aggressor's prior history of assaulting homosexual inmates). Accordingly, Watts fails to state a claim to relief against Rodger for failure to protect.

### C. **Fourteenth Amendment Equal Protection Claim**

Watts states that Rodger wrongfully transferred him to general-population because he dislikes homosexuals.  (ECF No. 1 at PageID 3**.**)  The Court construes this contention as alleging that Plaintiff was denied equal protection of the law.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It directs that all persons similarly situated should be treated alike.  It prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *See, e.g., City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012).  But "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone —a discriminatory intent or purpose is required."  *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)).  To prevail under an equal protection challenge, the claimant "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."  *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).  A plaintiff must show that defendants intentionally treated him differently than similarly situated individuals, targeted a suspect class, or burdened a fundamental right.  *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 591 (6th Cir. 2011).  Such allegations must be supported by facts.  Merely alleging that an individual's actions were based upon  membership in a protected class and were "supported

by animosity towards [the] plaintiff" who belongs to a different class does not suffice. *Nali v. Ekman*, 355 F. App'x 909, 912–13 (6th Cir. 2009).

Applying these principles, Watts's equal protection contention is insufficiently alleged. He has not offered facts demonstrating that Rodger was motivated to treat him differently on the basis of Plaintiff's homosexuality. *See Nali*, 355 F. App'x at 913. Instead, Watts offers only his own unsupported conclusion that Rodger harbored animosity and implemented harmful action because of Plaintiff's homosexuality. (ECF No. 1 at PageID 3.)

Accordingly, Watts fails to state an equal protection challenge under the Fourteenth Amendment.

### D.  Claim Of Wrongful Housing Assignment

Plaintiff states that his transfer in handcuffs from protective-custody to general-population was improper. (ECF No. 1 at PageID 3.) His allegation fails to state a claim for relief, as the Court does not have the authority to supervise the housing assignment of inmates.

Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment. *See Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002) ("[A] prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification."); *see also Sandin v. Conner*, 515 U.S. 472, 484–87 (1995); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004). Plus, because "maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures." *Hayes v. Tennessee*, 424 F. App'x 546, 550 (6th Cir. 2011). What is more, courts "have deferred to judgments of prison officials in upholding these regulations against constitutional challenge." *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223,

229 (2001)).  In sum, Watts does not state a claim of constitutional deprivation based on his brief relocation to the Jail's general-population area.

**III.      <u>AMENDMENT UNDER THE PLRA</u>**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the Prison Litigation Reform Act.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *see also Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).  The Court finds that Plaintiff should be given the opportunity to amend the complaint.

Any amendment must be filed within twenty-one (21) days after the date of this Order.  Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings.  The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  Plaintiff is advised that all amended claims must be set forth in a single document.

If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss this case and enter judgment. The Court recommends that dismissal of this case be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021).

## IV. <u>CONCLUSION</u>

For all of the reasons explained above: (1) the Court **DISMISSES WITHOUT PREJUDICE** all claims in Plaintiff's complaint (ECF No. 1) for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)–(2); and (2) leave to amend is **GRANTED**.

**IT IS SO ORDERED** this 12th day of July, 2021.

*s/ Mark Norris*

MARK S. NORRIS
UNITED STATES DISTRICT JUDGE